UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Contech Engineered Solutions LLC,

        Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Civil No. 14-119 ADM/TNL

Element Materials Technology St. Paul Inc.,

        Defendant.

_____

Paul Joyce, Esq., Colucci & Gallaher PC, Buffalo, NY, on behalf of Plaintiff.

Christiana Martenson, Esq., Faegre Baker Daniels LLP, Minneapolis, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

On August 4, 2015, the undersigned United States District Judge heard oral argument on Defendant Element Materials Technology St. Paul Inc.'s ("Element") Motion for Summary Judgment [Docket No. 38]. Plaintiff Contech Engineered Solutions LLC ("Contech") opposes the motion. For the reasons set forth below, the Motion for Summary Judgment is granted.

## II. BACKGROUND

### A. Inspection of the Holland Bridge

Contech manufactures, markets, and sells site solutions for construction projects. Joyce Decl. [Docket No. 53] Ex. A ("Contech Dep.") 16:2–18. This includes the design and construction of truss bridges for pedestrian use. Id. Element is an engineering consulting firm, offering inspection and testing services. Id. Ex. B ("Element Dep.") 64:2–10; Compl. [Docket No. 1] ¶¶ 3–4. Element has provided services to Contech for over fifteen years. Carter Decl. [Docket No. 41] ¶ 3.

In June 2009, non-party Midwest Bridge Company hired Contech to both design and construct a pedestrian bridge to be located in Holland, Michigan (the "Holland Bridge"). Contech Dep. 63:12–64:22. Contech arranged for Element to inspect the Holland Bridge fabricated in Contech's Alexandria, Minnesota facility in April 2010. Gerads Decl. [Docket No. 42] ¶ 3.

On April 12, 2010, Element technician Rick Gerads traveled to the Alexandria facility and performed a visual inspection of the structural welds and a magnetic particle inspection on 10% of the structural welds. Id. ¶¶ 3–4. Gerads' inspection report memorialized his findings that the structural welds were not defective and acceptable for size, location, and quality. Id. ¶ 4, Ex. 1. Element charged Contech $637.00 for the inspection. Id. ¶ 4. On April 14, 2010, Element sent Contech an invoice totaling $1,891.35, which included the price of the inspection and other services provided to Contech. Id. Ex. 2.

In June 2010, Contech delivered the bridge to Midwest Bridge Company for erection and installation in Holland, Michigan. Contech Dep. 98:16–21. After installation was complete, technicians from TUV Rheinland Non-Destructive Testing Services ("TUV Rheinland") inspected the Holland Bridge on September 14, 2010. Martenson Decl. [Docket No. 43] Ex. 3, Interrog. No. 13. The inspection revealed several alleged defects previously unnoted by Element, relating to porosity and welding. Joyce Decl. Ex. F ("TUV Rheinland Report").

Shortly thereafter, on September 21, 2010, Gerads attended a meeting at the bridge site to view and discuss the allegedly defective welds. Gerads Decl. ¶ 7. On this occasion, Gerads did not perform a formal inspection or complete an inspection report. Id. Contech notified Element in writing of the alleged defects described in the TUV Rheinland Report on September 29, 2010.

Id. Ex. 3. Contech declined Element's offer to perform an additional inspection at no charge, stating that the Michigan Department of Transportation prohibited Element from being involved in any re-inspection procedures. Id. ¶ 9.

The Michigan Department of Transportation did not accept the bridge because of the alleged defects. Joyce Decl. Ex. G. Between May and September 2011, Contech performed remedial work onsite to repair the allegedly defective welds and hired TUV Rheinland to re-inspect the bridge. Gerads Decl. ¶ 9. Contech expended $298,096.18 to remedy the allegedly defective welding. Joyce Decl. Ex. H, Interrog. No. 9.

**B. Element's General Terms and Conditions for Services**

Element maintains a set of General Terms and Conditions of Sale and Performance of Testing Services By Stork Twin City Testing Corporation ("General Terms and Conditions").[1] Carter Decl. Ex. 1. The terms dictate that they apply to all testing services performed by Element:

> These General Terms and Conditions . . . shall apply to all acts in respect of the purchase and sale of testing and other services . . . . The submission by a party . . . of any sample to [Element] for testing or similar services shall, upon acceptance of such sample by [Element] for such services, constitute an express Contract to which these Terms and Conditions apply.

Id. § 1. Section 8 of the General Terms and Conditions includes language limiting remedies available to Element's customers and mandates several prerequisite conditions that must be satisfied for a customer to obtain remedies:

> The sole and exclusive remedy of [a] Customer . . . in respect of any claim against [Element] based on or relating to any claimed defect in the Work . . . shall be (i)

---

[1] Stork Twin City Testing Corporation was renamed Element Materials Technology St. Paul Inc. in 2011. Carter Decl. ¶ 2.

3

> upon the return, restoration, or replacement by Customer of Customer's property upon which the Work was performed, the re-performance of any defective portion of the Work, or (ii) at [Element's] option, a refund or credit to Customer in the amount of the price paid for the defective portion of the Work
>
> Customer's remedies hereunder shall only be available if (i) [Element] has been paid in full for the Work . . . (ii) [Element] is notified in detail, in writing, of the claimed defect or other claim within twenty days of Customer's discovery thereof and within ninety days after the completion of the Work; and (iii) [Element] is permitted to inspect any and all property with respect to which the work is claimed to have been defective or to which Customer's claim otherwise relates.

Id. § 8.

Element provided Contech with the General Terms and Conditions on several occasions. On March 9, 2006, Element sent a letter to each of its customers informing them that all services offered by Element were subject to the General Terms and Conditions. Carter Decl. Ex. 2. Further, since January 2010, Element has utilized an accounting program that attaches a copy of the General Terms and Conditions to quotations and confirmations sent to customers. Id. ¶ 6. According to Element, it sent either quotations or confirmations with the attached General Terms and Conditions to Contech on at least 15 instances between 2010 and 2011, including at least four times before Element's April 12, 2010 inspection of the Holland Bridge. Id. ¶¶ 5–6.

On April 14, 2010, two days after Gerads' inspection in Contech's Minnesota facility, Element sent Contech an invoice for the Holland Bridge work which referenced the General Terms and Conditions: "THE ONLY APPLICABLE TERMS AND CONDITIONS ARE THE GENERAL TERMS AND CONDITIONS OF SALE AND PERFORMANCE OF TESTING SERVICES BY STORK TWIN CITY TESTING CORPORATION, A NORTH CAROLINA BUSINESS CORPORATION–DATED 05/01/2001." Gerads Decl. Ex. 2; Joyce Decl. Ex. D, Interrog. No. 8.

4

**C. The Instant Action**

Contech initiated this action on January 13, 2014, asserting three claims in its Complaint against Element: (1) breach of contract based on the parties' course of conduct and oral representations; (2) negligence; and (3) professional negligence. Compl. ¶¶ 29–44. Element now moves for summary judgment. Element maintains that the claims are barred by the two year statute of limitations in Minn. Stat. § 541.051. Additionally, Element argues that the General Terms and Conditions incorporated in its agreement with Contech to inspect the bridge preclude recovery.

### III. DISCUSSION

**A. Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The United States Supreme Court, in construing Federal Rule 56(c), stated in Celotex Corp. v. Catrett:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. 317, 322 (1986).

On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1134 (8th Cir. 1999). However, the nonmoving party may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.  Minnesota Statute § 541.051**

Element argues that Contech's claims are untimely under Minn. Stat. § 541.051, subd. 1, which applies a two-year statute of limitations. Section 541.051 provides the following:

> (a) Except where fraud is involved, no action by any person in contract, tort, or otherwise to recover damages for any injury to property, real or personal . . . arising out of the defective and unsafe condition of an improvement to real property, shall be brought against any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of the improvement to real property or against the owner of the real property more than two years after discovery of the injury . . . .

Minn. Stat. § 541.051, subd. 1. Element claims that § 541.051 bars recovery because TUV Rheinland discovered the weld defects on September 14, 2010, and Contech did not file suit until more than three years later on January 13, 2014. Whether the two-year statute of limitations is applicable to a given claim turns on the allegations asserted in the complaint. Griebel v. Andersen Corp., 489 N.W.2d 521, 523 (Minn. 1992). Contech maintains that § 541.051 does not bar recovery in this action for several reasons.[2]

**1.  Inspection Services**

The parties dispute whether Element's action of "inspecting" the bridge falls within the purview of § 541.051. Contech reasons that because Element was hired to inspect the bridge—not to build the bridge or perform any of the welding—§ 541.051 is inapplicable as it does not specifically include "inspection" in the list of actions covered by the statute. Element counters that inspection work is implicitly covered by the listed activities of "supervision" and "observation of construction." Element argues it "played a supervisory and observational role by

---

[2] Contech does not challenge that its claims arise out of a "defective and unsafe condition" or that the Holland Bridge constitutes an "improvement to real property" as required by § 541.051.

inspecting and testing the welds performed by Contech" and therefore the statute of limitations applies. Def.'s Reply Mot. Summ. J. [Docket No. 54] 11.

The Court accepts Element's argument. Although § 541.051 explicitly identifies parties "performing or furnishing the design, planning, supervision, materials, or observation of construction, or construction of the improvement to real property" as covered under the statute of limitations, this list is not exhaustive of covered activities. Minn. Stat. § 541.051, subd. 1(a). The Minnesota Supreme Court has noted that the language of § 541.051, "as drafted, can be interpreted to bring into the orbit of protected persons, tenants, and other persons in possession, as well as engineers and surveyors. We cannot expect the drafters to spell out specifically every protected class as long as their intent is clear." Calder v. City of Crystal, 318 N.W.2d 838, 843 (Minn. 1982). Minnesota courts have further recognized that § 541.051 has a broad application to parties involved in the construction process. See Thorp v. Price Bros. Co., 441 N.W.2d 817, 820 (Minn. Ct. App. 1989) ("§ 541.051 broadly applies to 'any person performing or furnishing the design, planning, supervision, materials, or observation of construction or construction of' an improvement") (emphasis added).

Indeed, finding inspection of the bridge's welding protected under § 541.051's two-year limitations period comports with the statute's intent.[3] Section 541.051 identifies actions included in the construction process of an improvement to real property. In Sartori v. Harnischfeger Corp., the Minnesota Supreme Court "found that the purpose of the statute is to

---

[3] If a statute is "reasonably susceptible to more than one interpretation," Minnesota courts "look to other factors, such as the occasion and necessity for the law, to determine legislative intent." Lietz v. Northern States Power Co., 718 N.W.2d 865, 870 (Minn. 2006) (internal quotation omitted).

eliminate stale suits against 'architects, designers and contractors who have completed the work, turned the improvement to real property over to the owners, and no longer have any interest or control in it.'" Jensen-Re P'ship v. Superior Shores Lakehome Ass'n, 681 N.W.2d 42, 45 (Minn. Ct. App. 2004) (quoting Sartori v. Harnischfeger Corp., 432 N.W.2d 448, 454 (Minn. 1988)). Thus, § 541.051 seeks to limit lawsuits brought against those involved in the construction phase of an improvement to real property when they have subsequently relinquished control over the improvement to the property.

Element falls within the class of parties § 541.051 is designed to protect. Contech emphasizes that "Element was hired to inspect the bridge, not build it." Mem. Opp'n Summ. J. [Docket No. 52] 17. However, the activity of inspection of the welds here comprised a portion of the construction phase of the Holland Bridge. Contech hired Element as an "engineering consultancy" to inspect the Holland Bridge's welds. Compl. ¶ 4. This inspection occurred at Contech's Alexandria, Minnesota facility prior to the bridge's transportation and final installation in Michigan. Element observed the construction completed by Contech and reported on sufficiency of the construction. Concluding that inspection services falls within the meaning of "supervision" and "observation of construction" accords with the statute's purpose to eliminate overdue lawsuits alleging defects in the construction process.

This conclusion is supported by Sterling Heights, LLC v. Veit, No. A12-0889, 2012 WL 5990311 (Minn. Ct. App. Dec. 3, 2012), a case concerning an apartment building's construction defects. The original owner and builder of the property first hired Defendant Duffy Engineering ("Duffy") to work on the property, which was completed in 2003. Sterling Heights, 2012 WL 5990311 at *1. In 2006, Duffy was hired to inspect the property prior to sale. Id. In 2009, some

8

posts and trusses in the structure snapped and partially failed. The subsequent owners of the property commenced an action a year later in 2010 against the original owner. An amended complaint later named Duffy as a defendant, asserting a negligent misrepresentation claim and negligence claim addressing Duffy's inspection of the complex in 2006 and its failure to discover defects in the structural support system. Id. On summary judgment, the district court rejected the argument that § 541.051 applies only to claims for defective workmanship and granted summary judgment for Duffy on both claims based on § 541.051's two-year statute of limitations. Id. at *2. The Minnesota Court of Appeals affirmed, noting that "the district court concluded that Minn. Stat. § 541.051 applied to appellant's misrepresentation and negligence claims against Duffy because those claims were based on Duffy's alleged failure to design the property in accord with the prevailing standard of care and its negligence in failing to discover and disclose the internal defects in the structural support system." Id. at *3 (emphasis added).

Contech argues that because Duffy worked as both a designer and inspector on the project, the holding in Sterling Heights is not actually based on inspection services, but instead on Duffy's work as a designer of the property. Although Duffy's role of a designer most certainly places it within the purview of § 541.051's statute of limitations, Contech's argument that Sterling Heights is inapposite is unpersuasive. The Court of Appeals' language lends support to the conclusion that dismissal was additionally based on Duffy's role in "fail[ing] to disclose" the structural defects in the 2006 inspection. Sterling Heights supports the determination that Element's inspection services fall within the protection of the two-year statute of limitations codified in 541.051.

Considering § 541.051's intent to broadly protect individuals involved in the construction

9

phase of an improvement to real property and the Minnesota Supreme Court's own recognition that § 541.051 need not explicitly label every protected class, Element's inspection services performed in 2010 cannot escape the reach of § 541.051 merely because the action of inspection is not expressly identified. The Court therefore finds that inspection here is necessarily embraced by the expressed statutory categories of "supervision" and "observation of construction."

### 2. Exception of Subdivision 1(d)

Contech further argues that the exception articulated in Minn. Stat. § 541.051(1)(d) removes inspection activities as a category protected under the statute. This exception states that "[n]othing in this section shall apply to actions for damages resulting from negligence in the maintenance, operation or inspection of the real property improvement against the owner or other person in possession." Minn. Stat. § 541.051(1)(d). According to Contech, this section evinces that "[t]he Minnesota Legislature, clearly recognizing that inspections are not protected by Minn. Stat. § 541.051, did not include inspector as one of the 'statutorily-prescribed categor[ies]' that are subject to the statute." Mem. Opp'n Summ. J. at 18.

Contech's argument is structurally unsound. The exception serves to preserve claims related to ordinary premises liability for an owner or possessor of the improvement to real property. See Ocel v. City of Eagan, 402 N.W.2d 531, 534 (Minn. 1987) ("The intent of the exception appears to be . . . to leave undisturbed the limitation period for ordinary landowner's liability."); Monson v. Suck, 855 N.W.2d 323, 327 (Minn. Ct. App. 2014) ("The [S]upreme [C]ourt has stated that subdivision 1(d) preserves claims that an owner or possessor of real property has breached the duty under common law to use reasonable care for the safety of

entrants on their land, including the duty to inspect their premises for dangerous conditions and to repair them or warn entrants about them." (quotation omitted)).  As such, "[t]here are two requirements to the exception—one based on what kind of action is involved and the other based on whom the action is against."  Siewert v. N. States Power Co., 793 N.W.2d 272, 288 (Minn. 2011).  The party asserting the benefit of the exception to the statute of limitations bears the burden of proving the exception's applicability.  State Farm Fire and Cas. v. Aquila, Inc., 718 N.W.2d 879, 886 (Minn. 2006).

Contech has failed to show that the exception to the two-year statute of limitations applies here.  Although this action asserts a negligent inspection claim, the second requirement remains unsatisfied—the action is not asserted against "the owner or person in possession."  Element does not own, nor is it in possession of the Holland Bridge.  The exception of subdivision 1(d) therefore does not prevent Element from asserting a statute of limitations defense related to its inspection services.

### 3. Real Property Located Out of State

Finally, Contech argues that the two-year statute of limitations does not bar its claims because the Holland Bridge was installed in Michigan, not Minnesota.  Specifically, Contech maintains that the improvement to real property did not occur until the Holland Bridge was installed in Michigan and, therefore, applying the statute of limitations would violate the well-established presumption against extra-territorial application of Minnesota statutes.  Contech instead urges that Minnesota's general six-year statute of limitations (Minn. Stat. § 541.05) applies here.  Element responds that Contech's argument is unfounded as § 541.051's statute of limitations is a procedural law that does not regulate people, things, or conduct outside of

Minnesota.

Contech's argument is unpersuasive. According to Contech, if the two-year statute of limitations is applicable to improvements to real property outside of Minnesota, "any Minnesotan who participated in design, planning, supervision, materials or observation or construction of any improvement to real property anywhere in the United States of America (or the world) could rely on the Minnesota statute of limitations, granting the citizen of Minnesota the right to determine the laws of its sister states." Mem. Opp'n Summ. J. at 15–16. In support of this interpretation, Contech references Olson v. Push, Inc., which held the Minnesota Drug and Alcohol Testing in the Workplace Act ("DATWA") did not apply to an out of state employer hiring for an out of state position. Civ. No. 14-1163, 2014 WL 4097040 (D. Minn. Aug. 19, 2014).

The application of § 541.051's statute of limitation to the facts here is very different than the context presented in Olson. In Olson, the statute in question substantively regulated the conduct of employers in their drug testing procedures and, as such, application of this statute to an out of state employer necessarily would regulate extra-territorial conduct. Olson emphasized that a presumption exists against extra-territorial application of Minnesota's statutes and that the presumption "reflects the long-established recognition of a state's sovereign power to regulate person and things within its territory, and that conversely, it is beyond the power of a state to impose its laws upon another state." Id. at *2 (internal quotation marks omitted). As correctly argued by Element, the statute of limitations at issue here is procedural in nature. See Weston v. McWilliams & Assoc., Inc., 716 N.W.2d 634, 641 (Minn. 2006) (stating that "a statute of limitations limits the time within which a party can pursue a remedy (that is, it is a procedural

limit)" and identifying statue of limitations as "procedural in nature"). Therefore, unlike the application of DATWA to an out of state employer hiring for a position located outside of Minnesota, § 541.051's statute of limitation does not impose Minnesota law on sister states or regulate conduct outside of Minnesota. Instead, the statute simply serves to regulate access to Minnesota courts.

The persuasiveness of Contech's extra-territorial application argument is further diminished because Contech does not argue for the application of a non-Minnesota statute of limitations. Rather, Contech maintains that Minnesota's general six-year statute of limitations in Minn. Stat. § 541.05 is applicable instead. Contech cannot persuasively challenge the application of one Minnesota statute of limitations due to extra-territorial concerns while simultaneously arguing that another Minnesota statute of limitations should govern in its place.[4]

Moreover, to the extent there may be some question as to which Minnesota statute of limitations governs, it is well-established that "[w]hen two statutes of limitations potentially apply to the same action and cannot be reconciled, Minnesota courts will apply the more particular provision over the general provision." Minch Family LLLP v. Estate of Norby, 652

---

[4] Beyond arguing that applying § 541.051 would violate the presumption against extra-territorial application of Minnesota's statutes, Contech does not contend that a conflict of law exists between Minnesota and Michigan. However, as Element correctly notes, even if this Court were to engage in a choice-of-law analysis, § 541.051 would still govern. "A federal court sitting in diversity must apply the choice of law principles of the state in which it sits." Honeywell, Inc. v. Ruby Tuesday, Inc., 43 F. Supp. 2d 1074, 1077 (D. Minn. 1999) (citation omitted). In Minnesota, choice-of-law analysis requires that Minnesota courts apply Minnesota's procedural laws when conflict between Minnesota law and another state's law arise. See Davis v. Furlong, 328 N.W.2d 150, 153 (Minn. 1983) (stating that an "almost universal rule [exists] that matters of procedure and remedies [are] governed by the law of the forum state"). Specifically, Minnesota courts have repeatedly held that statute of limitations pertaining to common law rights (as is the case here) are procedural laws, rather than substantive. See Christian v. Birch, 763 N.W.2d 50, 58 (Minn. App. 2009).

F.3d 851, 858 (8th Cir. 2011) (citing Ford v. Emerson Elec. Co., 430 N.W.2d 198, 200 (Minn. App. 1988)). "Section 541.051 is a more specific provision for real property improvements than the more general six-year period for claims under § 541.05." Minch, 652 F.3d at 858 (citing Nolan and Nolan v. City of Eagan, 673 N.W.2d 487, 496–97 (Minn. App. 2003)); see also In re Levee Drive Assoc., Ltd. v. Bor-Son Building Corp., 441 N.W.2d 560, 564 (Minn. App. 1989) ("Section 541.051 clearly contains the more particular provision because it is limited to actions involving a defective and unsafe condition of an improvement to realty, whereas section 541.05, subd. 1(1) applies generally to all actions based upon a contract or obligation."). Finally, another court in this district has barred claims arising out of an improvement to real property occurring out of state under § 541.051's two-year statute of limitations. See Associated Electric & Gas Insurance Service v. BendTec, Inc., No. 14-1602, 2015 WL 3915805 (D. Minn. June 25, 2015) (finding that the two year limitations period of § 541.051 barred claims related to the improvement of a commercial power generation facility located in New Hampshire).

   For all these reasons, § 541.051's two-year statute of limitations is applicable to Contech's claims. Because Contech's claims are time barred, the Court need not address Element's alternative contractual argument based on Terms & Conditions documents with Contech.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Element's Motion for Summary Judgment [Docket No. 38] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: October 29, 2015.